CHAISSON, J.
Defendant, Kedrick K. Anderson, challenges his convictions and sentences for two counts of attempted second degree murder. Defendant's appointed appellate counsel has filed a brief which challenges the sufficiency of the evidence used to convict defendant. In addition, defendant has filed a pro se brief alleging constitutional violations in the multiple offender proceedings and prosecutorial misconduct. For the reasons that follow, we find no merit to the arguments raised in either brief and accordingly affirm defendant's convictions and sentences.
PROCEDURAL HISTORY
On January 23, 2014, the Jefferson Parish Grand Jury returned an indictment charging defendant with two counts of attempted second degree murder that occurred on July 13, 2013, in violation of La. R.S. 14:27 and La. R.S. 14:30.1.[1] At the February 10, 2014 arraignment, defendant pled not guilty. The matter proceeded to trial before a twelve-person jury on December 13, 14, and 15, 2016.[2] After considering the evidence presented, the jury found defendant guilty as charged on both counts.
On January 17, 2017, the trial judge sentenced defendant to fifty years on each count to run concurrently. On May 4, 2017, after a hearing, the trial court found defendant to be a second felony offender, vacated the original sentences on both counts, and resentenced defendant pursuant *1000 to the provisions of La. R.S. 15:529.1 to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence on each count to run concurrently.[3] Defendant now appeals.
FACTS
This case stems from a shooting that occurred on July 13, 2013, at the Ridgefield Apartments on Mount Kennedy Drive in Marrero. The victims were J.A. and her two-year-old son (hereinafter referred to as "J."), who lived at the apartment complex at the time of this incident.[4]
According to J.A., on the evening of July 13, 2013, she was inside her apartment with A.P. (the father of four of J.A.'s children, including J.), F.P. (A.P.'s brother), "Jeremy" (A.P.'s cousin), and two of her other children. At approximately 9:30 p.m., she left the apartment with J., Jeremy, and F.P. to go to Brothers' gas station to buy some snacks. Within ten minutes, they returned to the apartment complex, parked and exited their vehicle, and proceeded towards J.A.'s apartment located in building ten.
J.A. described that as they were walking to her apartment, "they just had bookoo [sic. ] black shirts came from the front, just ran and started shooting." At trial, J.A. testified that she recognized the "first main face" as Kevias Hicks, defendant's brother, and that Kevias was the individual who approached her from the front and shot her son. She explained that she "saw the fire" and that the first bullet hit J. She then "dived down" to grab J. and crawled through the grass, at which point F.P. told her to run. As she was trying to get away with J., J.A. looked up to her right and saw defendant in the parking lot by the dumpster come from behind the building with a "long gun," like a rifle. J.A. ran to a nearby apartment, and the occupants called 9-1-1.[5]
Deputy Christopher Lewis of the Jefferson Parish Sheriff's Office responded to the emergency call, and upon his arrival, he observed J.A. holding her son and screaming for help. In light of the urgency of the situation, Deputy Lewis carried the child to the emergency medical responders at the back of the apartment complex, and J. was rushed to the hospital. Deputy Lewis thereafter spoke to J.A. to try to find out what had happened. According to Deputy Lewis, J.A. told him that she heard several gunshots as she walked towards her apartment; however, she maintained that she did not see anyone and did not know who the perpetrators were. Deputy Lewis then secured the crime scene, canvassed the scene for evidence, and notified the crime scene technicians who recovered ballistics evidence from four different guns.
Thereafter, on July 22, 2013, J.A. spoke to Deputy Brandon Veal of the Jefferson Parish Sheriff's Office and provided him with the names of three people who were possibly involved in the shooting: defendant, Kevias Hicks, and Kevin Hicks. However, J.A. would not explain how she obtained that information.
*1001 In October of 2013, Deputy Joe Ragas of the Jefferson Parish Sheriff's Office spoke to J.A. who indicated that she was afraid to come forward with any information and did not want to get involved. As Deputy Ragas had a good relationship with J.A.'s family, she ultimately decided to meet with him, and in late October of 2013, she provided recorded statements to the police and positively identified defendant and Kevias in photographic lineups as the perpetrators.[6] Defendant and his co-defendants were thereafter arrested for the July 13, 2013 shooting.
At trial, Jene Rauch, the supervisor of the firearms section at the Jefferson Parish Sheriff's Office Crime Lab and an accepted expert in the field of firearm and tool mark analysis and identification, testified regarding the ballistics evidence recovered from the scene of the July 13, 2013 Mount Kennedy shooting. Ms. Rauch asserted that there were eight 7.62 by 39-mm caliber cartridge casings recovered on the night of the shooting near the dumpster, that all eight of those casings were fired from the same weapon, and that those casings were usually shot in assault rifles. Ms. Rauch further stated that there were sixteen 9-mm casings that were recovered, noting that fourteen casings were fired in one gun and two casings were fired in a different gun. She also mentioned that there was one .45 caliber fired cartridge casing recovered that night.
In addition to the testimony relating to the July 13, 2013 incident, the State presented evidence at trial to suggest that this shooting was the result of an ongoing feud between the Hicks family and A.P.'s family. According to testimony presented, the feud stemmed from the fact that A.P. received substantially less prison time for an armed robbery than his co-defendant and was therefore labeled a "rat." Subsequent to this "designation," a series of violent transactions occurred between the Hick brothers, who were apparently sympathetic to the co-defendant in the armed robbery, and A.P. and his family.
The first noted incident happened on June 22, 2013, when A.P. was riding in J.A.'s vehicle with another person and several shots were fired, striking the vehicle but no individuals. The next incident was the July 13, 2013 shooting that forms the basis for the instant case. Three days later, on July 16, 2013, another episode occurred on the elevated portion of the Westbank Expressway.[7] On that occasion, Kevias Hicks was shot and injured as he and defendant were riding in a vehicle on the Westbank Expressway, and A.P. was implicated as being involved in that incident. Thereafter, on August 12, 2013, Ms. Aubrieon Davis, the mother of defendant's child, was shot at as she and her infant were in her vehicle traveling on Beechgrove. In that incident, Ms. Davis identified A.P. as the perpetrator, and A.P. later pled guilty to that offense.
In contrast to the testimony presented by the State, defendant testified at trial that he was not aware of an ongoing "beef" between Kevias or Kevin and A.P. and that any ongoing feud in 2013 had nothing to do with him. Defendant maintained that he was not involved in the July 13, 2013 shooting and was not present at the Ridgefield Apartments that night. Further, he stated that he knew J.A. and would not try *1002 to hurt her or her child. During his testimony, defendant expressed that J.A. was lying about the incident in order to protect A.P., the father of her children. He further voiced his belief that J.A. testified he was at Mount Kennedy with a rifle participating in the shooting because that was the only way she would get out of jail.[8]
SUFFICIENCY OF THE EVIDENCE
(Assignment of Error Number One)
On appeal, defendant challenges the sufficiency of the evidence used to convict him of two counts of attempted second degree murder. In his argument, he focuses on the lack of credibility of J.A., the State's only witness that placed him at the scene of the July 13, 2013 shooting.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Neal , 00-674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied , 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In the present case, defendant was charged with and convicted of two counts of attempted second degree murder. In order to prove attempted second degree murder, the State must establish beyond a reasonable doubt that the defendant specifically intended to kill a human being[9] and that he committed an overt act in furtherance of that goal. La. R.S. 14:30.1(A)(1) and 14:27 ; State v. Bishop , 01-2548 (La. 1/14/03), 835 So.2d 434, 437 ; State v. Bannister , 11-602 (La. App. 5 Cir. 2/14/12), 88 So.3d 628, 634, writ denied , 12-628 (La. 6/15/12), 90 So.3d 1060. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances surrounding the offense and the defendant's conduct. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person, as well as the extent and severity of the victim's injuries. State v. Holmes , 12-579 (La. App. 5 Cir. 5/16/13), 119 So.3d 181, 191, writ denied , 13-1395 (La. 1/10/14), 130 So.3d 318.
Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Ray , 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied , 13-1115 (La. 10/25/13), 124 So.3d 1096.
In the present case, we find that the State proved beyond a reasonable doubt the elements of the offenses, including the identification of defendant as one of the perpetrators. At trial, J.A. testified that on July 13, 2013, as she was walking towards her apartment with her son and F.P., several *1003 individuals in black shirts "came from the front, just ran and started shooting." J.A. stated that she recognized the "first main face" as Kevias Hicks, defendant's brother, and that Kevias was the individual who approached her from the front and shot her son.[10] She explained that she "saw the fire" and that the first bullet hit J. J.A. then "dived down" to grab J. and crawled through the grass, at which point F.P. told her to run. As she was trying to get away with J., J.A. looked up to her right and saw defendant in the parking lot by the dumpster come from behind the building with a "long gun," like a rifle. She subsequently identified defendant and Kevias in a photographic lineup as the perpetrators. In addition, J.A. positively identified defendant at trial as the person she saw with the rifle on the night of the shooting.
With regard to her identification, J.A. admittedly did not positively identify defendant until approximately three months after the shooting. However, the testimony presented at trial established that she knew defendant by his nickname, K.K., and that she had known him for approximately two years prior to the July 13, 2013 shooting. She testified that she and defendant used to live in the same neighborhood in Waggaman, that she was familiar with defendant's face, and that she knew defendant was Kevias' brother. Further, although on the night of the incident, J.A. told Deputy Lewis that she did not know who shot her son and did not see anyone, she identified her voice in the background of the 9-1-1 call saying, "I don't know their names but I know these dudes." She stated at trial that she was talking about defendant and Kevias. In addition, J.A. explained that she did not initially want to get involved or provide an identification because she feared for her life.
Further, the ballistics evidence presented at trial corroborated J.A.'s testimony that defendant was holding a rifle near the dumpster during the shooting. Ms. Rauch, the firearm and tool mark expert, testified at trial that there were eight 7.62 by 39-mm caliber fired cartridge casings recovered that night near the dumpster and that all eight of those casings were fired from the same weapon. Also, Chief Timothy Scanlan, the firearms and crime scene reconstruction expert, testified that the eight casings associated with the assault rifle were located near the dumpster area and that there was a shooter at or near the dumpster location. Chief Scanlan further testified that the crime scene reconstruction based on the recovered evidence from the July 13, 2013 shooting was consistent with J.A.'s description of events.
Based on the testimony and evidence specified above, we find that a rational trier of fact could have concluded that defendant had the specific intent to kill and committed an overt act in furtherance of that goal. Having addressed the elements of the offenses, we now turn our attention to the focus of defendant's argument, that being the credibility of J.A., the State's sole witness to place him at the scene of the July 13, 2013 shooting. Defendant contends that J.A.'s testimony was not based on her independent recollection of the event but rather on her boyfriend's animosity towards Hicks and his family. To support this attack on credibility, defendant points out that J.A. did not identify him until three months after the shooting, that J.A. gave multiple statements to the police regarding the shooting, that each statement either confused the facts *1004 from the previous statement or totally conflicted with the previous statement, and further that J.A. lied in the past to protect A.P. and was willing to do so again.
At trial, the jury heard testimony about the alleged ongoing feud between Kevias Hicks and his brothers and A.P. and his family, which resulted in several violent interactions. Further, the jury heard about J.A.'s relationship with A.P. and that he had encouraged her to lie for him with regard to the June 22, 2013 shooting. Additionally, the jury was aware of her delayed identification and the inconsistencies in her statements.
The jury also heard the evidence presented by the defense that there was no ongoing feud between the two families and that defendant knew J.A. and had no reason to shoot at her or her son. Further, during his testimony, defendant maintained that he had nothing to do with the shooting of J., that he was not at the Ridgefield Apartments that night, and that Kevias and Kevin did not convince him to go with them to shoot J.A., J., and F.P. The jury likewise heard defendant's version that J.A. implicated him in the shooting to protect the father of her children, A.P., and further to get out of jail.
In the present case, the jury was informed of all of these issues and the conflicts in testimony and obviously found the State's witnesses to be more credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan , 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Additionally, under Louisiana law, a victim's or witness' testimony alone is usually sufficient to support the verdict. State v. Munson , 12-327 (La. App. 5 Cir. 4/10/13), 115 So.3d 6, 13, writ denied , 13-1083 (La. 11/22/13), 126 So.3d 476. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Turner , 05-75 (La. App. 5 Cir. 5/31/05), 904 So.2d 816, 823, writ denied , 05-2591 (La. 5/26/06), 930 So.2d 20. Here, there was no internal contradiction or irreconcilable conflict with the physical evidence presented at trial.
Based on the foregoing, we find that the evidence presented by the State was sufficient to support the jury's determination that defendant was guilty of two counts of attempted second degree murder. Accordingly, the arguments raised by defendant relating to the sufficiency of the evidence are without merit.
FAILURE TO ADVISE OF MULTIPLE OFFENDER RIGHTS
(Pro Se Assignment of Error Number One)
In his first pro se assigned error, defendant contends that his constitutional rights were violated by the trial court's failure to advise him of his multiple offender rights as mandated by La. R.S. 15:529.1.
In the present case, at the beginning of the multiple offender proceedings, the State noted that it had previously filed a multiple offender bill of information alleging that defendant had one prior felony conviction for unauthorized entry. Defense counsel then informed the court that he reviewed the multiple bill with defendant as well as the certified conviction that the State intended to use and the transcript from trial reflecting defendant's admission *1005 that he had a prior felony conviction.[11] Thereafter, defense counsel advised the court that defendant was going to stipulate to his multiple offender status and waive his right to a hearing. The trial court then addressed defendant as follows:
THE COURT:
Mr. Anderson, the State of Louisiana has now filed a - - pursuant to the habitual offender law has filed a multiple offender bill of information against you charging you as a second felony offender. You understand that.
THE DEFENDANT:
Yes.
THE COURT:
...
You understand, sir, that you have the right to have a hearing with regard to that but I've been informed by your counsel that you want to waive your right to have that hearing and enter a plea of guilty to the multiple offender bill. Is that correct?
THE DEFENDANT:
Yeah, because you're going to find me guilty anyway, so ---
THE COURT:
Sir, what I need you to do is answer the question yes or no. You are entitled to have a hearing. Do you want to have that hearing or do you want to enter a plea of guilty to being a multiple offender?
THE DEFENDANT:
Yes, I want to have a hearing.
While preparing to start the hearing, the trial court continued his colloquy with defendant, explaining to him the nature of the hearing and the proof required by the State. Subsequent to this discussion, defense counsel again informed the trial court that defendant was ready to waive the hearing. The trial court, however, opted to proceed with the hearing.
At the hearing, the State introduced defendant's fingerprint card, the certified conviction packet from defendant's unauthorized burglary of a business conviction, and the certified transcript of defendant's trial testimony during which he acknowledged his prior conviction. In addition, the State presented the testimony of Deputy Courtney Sinon, an expert in latent print examination and processing, who testified that she compared the fingerprints of defendant taken that morning to those contained in the introduced certified conviction packet and determined that the fingerprints are from the same individual. Based on the evidence presented, the trial court found defendant to be a second felony offender and thereafter issued a written judgment and reasons.
Based on our review of the transcript, we find no violation of defendant's constitutional rights at the multiple offender proceedings. La. R.S. 15:529.1 requires the trial court to advise a defendant of the allegations contained in the bill of information, his right to a hearing, and his right to remain silent. In the present case, defendant was advised of the allegations contained in the multiple offender bill and of his right to a hearing but was not advised of his right to remain silent. However, the failure of the trial court to advise a defendant of his right to remain silent is harmless error when the multiple offender status is established by competent evidence offered by the State at a hearing, rather than by the admission of the defendant.
*1006 State v. Haywood , 00-1584 (La. App. 5 Cir. 3/28/01), 783 So.2d 568, 582.
Although the trial judge erred by not advising defendant of his right to remain silent, defendant proceeded to the multiple bill hearing, and the State presented competent evidence at the hearing to establish his multiple offender status. Therefore, the trial court's failure to advise him of his right to remain silent was harmless error. See State v. McClure , 15-237 (La. App. 5 Cir. 9/23/15), 176 So.3d 730, 735. This assigned error is without merit.
PROSECUTORIAL MISCONDUCT
(Pro Se Assignment of Error Number Two)
In his second pro se assigned error, defendant contends that the prosecutor intentionally misrepresented the facts and evidence in a prejudicial way, violating his constitutional rights to a fair and impartial trial and his right to present a defense.
While defendant's arguments in this pro se assigned error are unclear, his main challenge seems to be related to the sufficiency of the evidence used to convict him. He specifically complains about the State's use of "motive" evidence relating to the "back and forth violence" between A.P.'s family and the Hicks families to support his convictions. Defendant reasons that motive is not a crime, he is not charged with motive, and no district attorney can prove motive as it is an ambiguous emotion. He points out that the State did not have any type of factual or physical evidence showing that he had the desire to kill or attempt to kill anyone and that evidence of motive by itself is insufficient to prove his guilt.
To the extent that defendant is now challenging the sufficiency of the evidence used to convict him, we have already fully addressed that issue in the first assignment of error, finding that the State proved the elements of the offenses beyond a reasonable doubt.
While defendant's argument in this assignment focuses on the sufficiency of the evidence used to convict him, he also seems to be indirectly challenging the admissibility of this "motive" evidence, as indicated by his references to the June 24, 2016 hearing, which was held to consider the State's Prieur[12] notice to introduce evidence of other crimes in defendant's trial. At the pretrial hearing, after considering the State's assertion that it intended to use this evidence to show motive under La. C.E. art. 404(B), the trial court ruled admissible at trial the evidence regarding the shootings on June 22, 2013, and July 16, 2013, which involved members of A.P.'s family and the Hicks families.
While we do not necessarily agree that the provisions of La. C.E. art. 404(B) relating to other crimes evidence was the proper basis upon which to introduce these incidents as it pertains to this defendant, we nonetheless find that the complained of evidence was relevant to show motive and to provide a complete narrative of the ongoing dispute between A.P.'s family and the Hicks families, which resulted in a series a violent interactions, including the July 13, 2013 shooting. Therefore, the complained of evidence was properly admitted pursuant to the provisions of La. C.E. arts. 401 - 403. Further, we note that at the June 24, 2016 hearing, defendant did not object to the admissibility of the evidence relating to the June 22 and July 16, 2013 shootings.[13]
*1007 Based on the foregoing discussion, we find no merit to defendant's argument that the prosecutor intentionally misrepresented the facts and evidence in a prejudicial way, violating his constitutional rights to a fair and impartial trial and his right to present a defense. This assigned error is likewise without merit.
ERRORS PATENT REVIEW
We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990). Defendant notes in his appellate brief that the trial court failed to advise him of the prescriptive period for filing post-conviction relief as set forth in La. C.Cr.P. art. 930.8. While neither the sentencing transcript nor the minute entry/commitment reflects that the trial judge orally advised defendant of the provisions of La. C.Cr.P. art. 930.8, we note that defendant was in fact provided with both written and oral notices informing him of the time delays for filing post-conviction relief. Specifically, the record contains two letters dated May 8, 2017, and June 29, 2017, issued by the trial court to defendant advising him of the two-year time period for seeking post-conviction relief. Furthermore, the record contains a minute entry from August 28, 2017, reflecting that defendant was present in court for a motion hearing and that the trial court informed defendant that he had "thirty (30) days from today's date to appeal this conviction, and two (2) years after judgement of conviction and sentence has become final to seek post-conviction relief." Nonetheless, out of an abundance of caution, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. See State v. Neely , 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied , 09-248 (La. 10/30/09), 21 So.3d 272.
Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences for two counts of attempted second degree murder.
AFFIRMED

It is noted that Kevias C. Hicks and Kevin Hicks were charged in the same indictment with two counts of attempted second degree murder stemming from the July 13, 2013 incident. In addition, Kevias Hicks, Kevin Hicks, and Tommie C. Molette a/k/a Tucker Molette were charged with second degree murder and attempted second degree murder arising from an incident that occurred on October 8, 2013. The co-defendants all have appeals pending before this Court: State v. Kevin Hicks , 17-696 (La. App. 5 Cir. 10/17/18), 258 So.3d 1050 ; State v. Kevias C. Hicks , 18-46 (La. App. 5 Cir. 10/17/18), 257 So.3d 1283 ; State v. Tommie C. Molette a.k.a. Tucker Molette , 17-697 (La. App. 5 Cir. 10/17/18), 258 So.3d 1092.

On May 19, 2016, the trial court granted defendant's motion to sever, and he proceeded to trial alone.

La. R.S. 15:529.1 does not prohibit enhancing multiple sentences obtained on the same date arising out of a single criminal act or episode. State v. Alexander , 12-194 (La. App. 5 Cir. 5/16/13), 119 So.3d 120, 122, n.1, writ denied , 13-1337 (La. 12/6/13), 129 So.3d 529.

In order to protect the identity of the minor victim, initials of the minor victim and his family members will be used throughout this opinion. See La. R.S. 46:1844(W)(3).

The 9-1-1 recording was played at trial. J.A. identified her voice in the background of the call saying, "I don't know their names but I know these dudes."

J.A. also originally identified Kevin Hicks in the photographic lineup; however, she later told Deputy Ragas that she was unsure about Kevin.

It is noted that in the record, this shooting is referred to as both the Westbank Expressway and the Crescent City Connection shooting. Throughout this opinion, it will be referred to as the Westbank Expressway shooting.

J.A. was picked up on a material witness warrant and brought to jail to assure her attendance at trial.

This Court has recognized that although specific intent to inflict great bodily harm is sufficient to support a second degree murder conviction, attempted second degree murder requires a specific intent to kill. State v. Saulny , 16-734 (La. App. 5 Cir. 5/17/17), 220 So.3d 871, 877, writ denied , 17-1032 (La. 4/16/18), 240 So.3d 923.

During her trial testimony, J.A. recalled that just before the shooting, she saw Brittany Singleton, the mother of Kevias' son, wave her hand as if to signal to Kevias and the others that J.A. was approaching.

If the record reflects that the defendant was advised of his multiple offender rights by the trial judge and/or his attorney, then the defendant intelligently waived his rights. State v. Hart , 10-905 (La. App. 5 Cir. 5/10/11), 66 So.3d 44, 48, writ denied , 11-1178 (La. 11/18/11), 75 So.3d 448.

State v. Prieur , 277 So.2d 126 (La. 1973).

At the hearing, defense counsel specifically stated that he had no objection to the introduction of "those items listed in paragraph 3" of the State's notice of intent to introduce other crimes evidence (the June 22, 2013 shooting). With regard to the trial court's decision to allow the introduction of the July 16, 2013 incident at trial, defense counsel did not object but did point out that defendant was a victim in that case and his only involvement was driving his brother to the hospital after he got shot.