STATE OF LOUISIANA

VERSUS

BRANDON CORDELL MARTIN A.K.A. "B"

NO. 20-KA-141

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 17-7360, DIVISION "G"
HONORABLE E. ADRIAN ADAMS, JUDGE PRESIDING

April 28, 2021

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and Robert A. Chaisson

<u>**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH**</u>
<u>**INSTRUCTIONS**</u>
   **RAC**
   **SMC**
   **JGG**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Matthew R. Clauss
     Emily E. Booth

COUNSEL FOR DEFENDANT/APPELLANT,
BRANDON CORDELL MARTIN A.K.A. "B"
     Lieu T. Vo Clark

**CHAISSON, J.**

Defendant, Brandon Cordell Martin, appeals his convictions and sentences for second degree murder and obstruction of justice. For the reasons that follow, we affirm defendant's convictions and sentences; however, we remand the matter for correction of an error patent as noted herein.

## PROCEDURAL HISTORY

On March 22, 2018, a Jefferson Parish Grand Jury returned an indictment charging defendant with second degree murder, in violation of La. R.S. 14:30.1 (count one), and obstruction of justice, in violation of La. R.S. 14:130.1 (count two). At the arraignment, defendant pled not guilty.

On October 15, 2019, the case proceeded to trial before a twelve-person jury, and on October 18, 2019, the jury unanimously found defendant guilty as charged. On November 5, 2019, defendant filed a motion for new trial that was denied on November 7, 2019. After defense counsel waived sentencing delays, the trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, on count one, and to imprisonment at hard labor for twenty years, on count two, with the sentences to run concurrently.

Defendant now appeals, challenging the sufficiency of the evidence used to convict him of second degree murder.

## FACTS

On November 19, 2017, in response to a 9-1-1 call, deputies from the Jefferson Parish Sheriff's Office were dispatched to the 6100 block of Fourth Avenue in Marrero. Upon arrival at that location, officers observed the victim, later identified as Daz Alexis, lying in an empty field with an apparent gunshot wound to the head. The victim was non-responsive and was pronounced dead on

the scene.[1]  The responding officers canvassed the area and noted tire tracks in the grass on the right side of the victim.  In addition, the officers located, in the victim's pocket, a wallet containing an ID card and money.

Ashley Alexis, the victim's mother, testified at trial regarding her communication with her son on November 19, 2017, and her attempts to locate him.  According to Ms. Alexis, while out with her friends, she exchanged text messages with her son between 1:42 and 2:15 a.m. on November 19, 2017.  However, upon returning home at approximately 3:00 a.m., Ms. Alexis noticed that her son's Nissan Altima was not home.  Finding that unusual, Ms. Alexis tried calling and texting her son on his cell phone, but she received no response.  Worried, Ms. Alexis went to his girlfriend's house and University Hospital to look for him, but he was not at either of those places.  Ms. Alexis then went on a "T Mobile app" and saw the last phone numbers her son had called.  When she called one of the numbers, she spoke to Shane Stewart, who advised her that the last person her son was seen with that evening was "Brandon" and directed her to a photograph of that individual, which she later provided to the police.

Ms. Alexis also reviewed the footage from the security cameras at her home, which showed her son and another individual pull up in her BMW at 2:04 a.m.  She noticed that her son then went to his Nissan and got into the passenger seat, that the other person got into the driver's seat, and that the two drove off together.  Ms. Alexis subsequently went to the police station and filed a missing person report.  Later, the coroner came to her house and told her that her son's body had been found.

_____

[1] At trial, Dr. Dana Troxclair, an expert in the field of forensic pathology, testified that she performed the autopsy on Mr. Alexis and determined the cause of death to be a gunshot wound to the victim's head.  She asserted that based on the stippling around the wound, the muzzle of the gun was probably "an inch or so" from the victim's head.  Further, Dr. Troxclair testified that the victim had no injuries on his hands.

During the course of their investigation, police officers identified 2882 Barataria Boulevard in Marrero as an address associated with defendant. At trial, Sergeant Travis Eserman recalled that he went to that address and spoke to Kelsey Knuppel, one of the residents. Ms. Knuppel gave two statements to the detectives and also testified at trial.

At trial, Ms. Knuppel testified that in the early morning hours of November 19, 2017, at approximately 3:00 a.m., she, along with two other residents, Mikayla McDaniel and Christian Perez, were in the living room when defendant came inside the house through the unlocked front door, grabbed a gun out of his pants, and "slammed" it on the kitchen table. Ms. Knuppel described that defendant appeared scared and nervous "like something was wrong," that he was "panting," and that he commented "the less that we knew the better." Ms. Knuppel noted that defendant went into the kitchen, washed his hands, asked for a lighter, and began taking his clothes off.

According to the testimony at trial, defendant then went outside, burned the white t-shirt he had been wearing, came back inside, and asked Ms. Knuppel to call two of his friends, Fernando and Terren. Although Ms. Knuppel was unable to reach them on their phones, Terren and Fernando showed up at her house, at which point Terren picked the gun up from the table, emptied something out of it, and told defendant he needed to "handle that." According to Ms. Knuppel, Terren asked defendant if those were the pants he was wearing, that defendant said "yeah," and that Terren said, "they should have been gone." Defendant, Terren, and Fernando went into the bathroom, stayed several minutes, and then exited saying that they were sorry they had broken her toilet. The three men then left together. [2]

---

[2] Ms. McDaniel and Mr. Perez also gave statements to the police and testified at trial. Their trial testimony was very similar to that of Ms. Knuppel.

A search warrant was subsequently obtained for the residence at 2882 Barataria. Detective William Roniger, who participated in the execution of the warrant, testified that marijuana was found on the kitchen table. Further, Detective Roniger observed a "very distinct burn mark" on the concrete on the side of the house and located a burned piece of a white t-shirt next to the burn mark.

Detective Roniger also obtained a search warrant for the victim's Nissan, which was eventually located at an apartment complex at 2800 Mount Kennedy in Marrero, approximately three to five blocks from 2882 Barataria. During the course of the search, the officers retrieved, among other items, a pellet gun underneath the front passenger seat. At trial, Detective Roniger testified that a portion of the toy gun was sticking out from underneath the seat, that there was no blood on the pellet gun, and that part of the gun was plastic. He also testified that there was a Big Shot bottle and a Styrofoam cup in the cup holders in the middle of the vehicle and that those objects were not damaged.

On November 22, 2017, an arrest warrant was issued for defendant; however, detectives were unable to locate him. Approximately five days later, on November 27, 2017, defendant arrived unannounced at the detective bureau wishing to speak to investigators. After being advised of his rights, defendant gave a statement to Detective Harold Wischan, in which he denied any involvement in the murder and attempted to implicate another individual. After this interview, defendant was arrested for second degree murder.

On November 28, 2017, defendant requested to speak to homicide detectives and was transported to the detective bureau, at which time defendant was advised of and waived his rights. Defendant then gave a second statement, in which he eventually stated that the victim pulled a gun on him, they struggled over it, and the gun went off. Defendant also admitted that he burned his t-shirt outside the

residence at 2882 Barataria and that after the shooting, he parked the Nissan and threw the car keys into the canal.

In addition to giving two statements, defendant testified at trial regarding the events leading to his shooting of the victim. Defendant testified that on November 18, 2017, the victim picked him up in the BMW, after which they went to a party being held on a bus. He said they eventually got off the bus, got back into the BMW, and drove to the victim's house. Defendant admitted that he had a 38 revolver on his hip, which he explained that he carried for his protection as he was shot three times prior. Defendant explained that, pursuant to the victim's request that he drive, he got into the driver's side of the Nissan, the victim got into the passenger side, and they drove off. Defendant maintained that while in the car, the victim confronted him about the rumors that defendant planned to rob him of his vehicle. Defendant testified that he told the victim he would never do that. He explained that he was driving on Ames in the left lane and about to turn when the victim came up with a gun. Defendant asserted that he did not know where the gun came from or that the gun was a toy BB gun.

According to defendant, the victim told him to "pull this b*tch over." Defendant testified that pursuant to the victim's directive, he pulled the vehicle over and drove down the street while the victim had the gun pointed at him. He further testified that the victim told him to stop and turn around. Defendant explained that the victim turned his head, at which point he batted the victim's gun down, "upped" his own revolver, and shot the victim. Defendant then opened the car door, pushed the victim out of the car with his hands, and pulled off. He stated that he drove to the apartment in "panic mode," threw away the keys, and "got rid of everything."

Defendant testified that he walked down the street to Ms. Knuppel's house, went inside, put the gun on the table, and walked back and forth "still in shock,"

not believing what he had done. He claimed that he feared for his life when the victim pulled the gun. During his testimony, defendant acknowledged that he asked for a lighter and burned the white t-shirt he had been wearing, and that he called Fernando and Terren and asked them to come over, which they did. Defendant eventually left the apartment with his two friends, taking with him the gun and the pants he was wearing at the time of the incident.

During his testimony, defendant stated that he went to the police station and turned himself in because he wanted everyone to know the truth. Defendant recalled giving statements to Detective Wischan and admitted that he told many lies during those statements. He claimed that he lied because he knew he had made a mistake, did not want to go away for the rest of his life, and wanted to go home. Defendant asserted that he was telling the truth at trial and that he killed the victim in self-defense. He admitted that he took the gun from the car and threw it in the river because he did not want the police to find it and that he committed obstruction of justice. Defendant insisted that he did not mean to shoot the victim in the head and that he did not want the victim to die.

## SUFFICIENCY OF THE EVIDENCE

On appeal, defendant argues that the evidence was insufficient to support the second degree murder conviction, and therefore, the trial court erred in denying his motion for new trial.[3] He specifically contends that the State failed to prove beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that the homicide was not committed in self-defense.

When reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct, circumstantial, or a mixture of both,

---

[3] Defendant filed a motion for new trial on the basis that the law and evidence do not support his conviction. On appeal, defendant challenges the denial of his motion. Although this Court has recognized that the denial of a motion for new trial based on the verdict being contrary to the law and evidence is not subject to review on appeal, both the Louisiana Supreme Court and this Court have still addressed sufficiency claims under these circumstances. *State v. Bazley*, 09-358 (La. App. 5 Cir. 1/11/11), 60 So.3d 7, 19, *writ denied*, 11-282 (La. 6/17/11) 63 So.3d 1039.

viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The reviewing court is not required to determine whether defendant's suggested hypothesis of innocence offers an exculpatory explanation of events. Rather, the reviewing court must evaluate the evidence in the light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Baham*, 14-653 (La. App. 5 Cir. 3/11/15), 169 So.3d 558, 566, *writ denied*, 15-40 (La. 3/24/16), 190 So.3d 1189.

Defendant was convicted of second degree murder, which is defined in La. R.S. 14:30.1 as the killing of a human being when the offender: 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm.[4] *State v. Lewis*, 05-170 (La. App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, *writ denied*, 06-757 (La. 12/15/06), 944 So.2d 1277.

Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent need not be

---

[4] Here, the written jury charges reflect that the jury was informed it could convict defendant under the theory that he had the specific intent to kill or inflict great bodily harm upon the victim or because defendant was engaged in the perpetration or attempted perpetration of an armed robbery.

20-KA-141                                         7

proven as a fact, but may be inferred from the circumstances and the actions of the accused. *State v. Trim*, 12-115 (La. App. 5 Cir. 10/16/12), 107 So.3d 656, 660, *writ denied*, 12-2488 (La. 4/19/13), 111 So.3d 1030. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person, as well as the extent and severity of the victim's injuries. *State v. Anderson*, 18-45 (La. App. 5 Cir. 10/17/18), 258 So.3d 997, 1002, *writ denied*, 18-1848 (La. 4/15/19), 267 So.3d 1131. Whether a defendant possessed the requisite intent in a criminal case is a question for the trier of fact, and a review of the correctness of this determination is guided by the *Jackson* standard. *State v. Patterson*, 10-415 (La. App. 5 Cir. 1/11/11), 63 So.3d 140, 148, *writ denied*, 11-338 (La. 6/17/11), 63 So.3d 1037.

Applying the evidence in this case to these legal principles, we find that the State carried its burden of proving that defendant acted with specific intent to kill or inflict great bodily harm. In particular, the State proved that defendant shot the victim one time in the head. Further, Dr. Troxclair, who performed the autopsy, testified that the cause of death was a gunshot wound to the victim's head, and that based on the stippling around the wound, the muzzle of the gun was probably "an inch or so" from the victim's head. Thus, the State did present sufficient evidence to prove the elements of second degree murder.[5]

In the present case, defendant does not deny that he shot the victim; rather, he claims that he acted in self-defense because the victim pulled a gun on him. On appeal, defendant basically claims that the State failed to prove beyond a reasonable doubt that the homicide was not committed in self-defense. He argues that the circumstantial evidence presented by the State, i.e., the lack of injuries on

---

[5] On appeal, defendant only challenges the sufficiency of the evidence as to his second degree murder conviction. We nonetheless note that our review of the record reflects that the State presented sufficient evidence under the *Jackson* standard to establish the essential statutory elements of obstruction of justice as set forth in La. R.S. 14:130.1.

the victim's hands, the photographs of the vehicle that showed no signs of a struggle, the surveillance video that showed defendant had a revolver in his pocket before getting into the vehicle, and defendant's admission that a revolver was used in the shooting, was not enough to refute his self-defense assertion.

The fact that an offender's conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18; *State v. Patterson*, 63 So.3d at 148. When a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Reed*, 11-507 (La. App. 5 Cir. 2/14/12), 88 So.3d 601, 607, *writ denied*, 12-644 (La. 9/14/12), 97 So.3d 1014.

La. R.S. 14:20 provides in pertinent part:

A. A homicide is justifiable:

(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; *State v. Howard*, 15-473 (La. App. 5 Cir. 12/9/15), 182 So.3d 360, 363. In addition, while there is no unqualified duty to retreat, the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that

deadly force was necessary to avoid the danger. *State v. King*, 11-767 (La. App. 5 Cir. 2/28/12), 88 So.3d 1147, 1153, *writ denied*, 12-660 (La. 9/14/12), 99 So.3d 35.

The determination of a defendant's culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. The jury is the ultimate fact-finder in determining whether the State negated self-defense beyond a reasonable doubt. *Id.*

In the present case, we find that the State proved beyond a reasonable doubt that defendant did not act in self-defense. At trial, the State presented the surveillance video from the victim's house which showed that defendant got into the driver's seat of the victim's vehicle, that the victim got into the front passenger seat, and that they drove off at approximately 2:20 a.m. on November 19, 2017. The surveillance video also showed that defendant had a revolver in his pants pocket and that defendant and the victim were alone in the car. In addition, the State presented the testimony of Ms. Knuppel, Ms. McDaniel, and Mr. Perez, which revealed that at approximately 3:00 a.m. on November 19, 2017, defendant came into their home located at 2882 Barataria, "slammed" his gun on the table, took off his clothes, borrowed a lighter, went outside, and burned his t-shirt. Their testimony also indicated that defendant was nervous and was "panting," and that he stated the less they knew, the better. Pursuant to a search warrant, police officers located a burned piece of a white t-shirt next to the burn mark outside at 2882 Barataria.[6]

The State also presented evidence regarding their search of the victim's car, which was located a few blocks away from 2882 Barataria. During the course of

---

[6] In *State v. Patterson*, 63 So.3d at 149-50, this Court observed that the "defendant's actions after the incident, including failure to report the shooting, disposal of the weapon, and flight from the scene, were inconsistent with a theory of justifiable homicide," and that "[a] defendant's flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience."

the search, the officers retrieved, among other items, a pellet gun underneath the front passenger seat. At trial, Detective Roniger testified that a portion of the toy gun was sticking out from underneath the seat, that there was no blood on the pellet gun, and that part of the gun was plastic. He also testified that there was a Big Shot bottle and a Styrofoam cup in the cup holders in the middle of the vehicle and that those objects were not damaged. In addition, Detective Wischan testified that although defendant claimed at one point in his statement that there was a struggle over the center console, the two objects and an auxiliary cord in the center console were undisturbed.

Further, the evidence presented by the State revealed that the victim died of a single gunshot wound to the head, that the muzzle of the gun was approximately an inch away when it was fired, and that the victim had no injuries on his hands. Although defendant testified at trial that he killed the victim in self-defense, Detective Wischan explained that it would have been impossible for the bullet to have entered behind the victim's head on the left side and exit the right side if the victim and defendant were struggling for the gun when it went off. Also, Detective Wischan testified that the victim's legs were pointing straight forward at the time he was shot based on the blood found on the front of the victim's pants and on the seat where the victim was sitting.

In addition, the jury was presented with defendant's two statements, in which he consistently changed his story of what happened depending on the information or evidence that he believed the police possessed. In fact, at some point during defendant's first statement, Detective Wischan asked defendant if he killed the victim in self-defense, and defendant told him, "Nothing like that happened." In addition, the jury heard testimony that between defendant's first and second statements, defendant called a friend to ask her to provide him with a false alibi, but she refused.

At trial, defendant admitted that he lied in the statements he gave to police but claimed that he was now testifying truthfully. In his trial testimony, defendant asserted that he shot the victim after the victim pulled a gun on him. The jury, by its verdict, obviously gave more credit to the evidence presented by the State that supported its theory that the killing was not committed in self-defense. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

In light of the foregoing, we find that the evidence was constitutionally sufficient to support the jury's finding that defendant had the specific intent to kill or inflict great bodily harm on the victim and that defendant did not act in self-defense. Accordingly, the arguments raised by defendant relating to the sufficiency of the evidence used to convict him of second degree murder are without merit.

## ERRORS PATENT REVIEW

We have reviewed the record for errors patent according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review reveals that the uniform commitment order and the sentencing minute entry/commitment reflect the incorrect adjudication date. In particular, these commitments reflect that the adjudication date was October 19, 2019; however, the transcript and the minute entry from trial indicate that the adjudication date was October 18, 2019. Accordingly, we remand the matter to the district court with instructions to correct the adjudication date. We further order the Clerk of Court for the 24th Judicial District Court to transmit the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P.

art. 892(B)(2) and to the Department of Corrections' legal department. *See State v. Miller*, 20-182 (La. App. 5 Cir. 12/23/20), 308 So.3d 1246, 1259.

Accordingly, for the reasons set forth herein, we affirm defendant's convictions and sentences for second degree murder and obstruction of justice, and we remand the matter for correction of an error patent as noted herein.

**CONVICTIONS AND SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**APRIL 28, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-KA-141

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE E. ADRIAN ADAMS (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          LIEU T. VO CLARK (APPELLANT)

**MAILED**
BRANDON C. MARTIN  (APPELLANT)        EMILY E. BOOTH (APPELLEE)
LOUISIANA STATE PENITENTIARY          HONORABLE PAUL D. CONNICK, JR.
ANGOLA, LA 70712                      (APPELLEE)
                                      DISTRICT ATTORNEY
                                      TWENTY-FOURTH JUDICIAL DISTRICT
                                      200 DERBIGNY STREET
                                      GRETNA, LA 70053