CHEHARDY, C.J.
On appeal, defendant challenges the trial court's denial of his motion to sever his trial from that of his co-defendants and the trial court's denial of his motion for mistrial. For the following reasons, we affirm.
Procedural History
On January 23, 2014, a Jefferson Parish Grand Jury indicted defendant, Kevias C. Hicks, with the second degree murder of Deshon Evans, in violation of La. R.S. 14:30.1 (count one) and the attempted second degree murder of Jonquell Neal, in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count two). Further, in that same indictment, the grand jury indicted Kevias C. Hicks for the attempted second degree murder of a known juvenile (hereinafter "J.") and the attempted second degree murder of his mother, J.A., in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (counts three and four respectively).[1]
On May 22, 2017, trial commenced before a twelve-person jury.[2] After a six-day *1286 trial, the jury found defendant guilty as charged on all four counts. On June 26, 2017, the trial judge sentenced defendant for second degree murder to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; and, for each count of attempted second degree murder, to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence, with the fifty-year sentences on counts three and four to run consecutively to the life sentence for count one. Thereafter, defendant filed a timely notice of appeal, which was granted.
Facts
In this case, Kevias C. Hicks, defendant-herein, and his brothers, Kevin Hicks and Kedrick Anderson, were indicted on two counts of attempted second degree murder for their involvement in a shooting incident that occurred on July 13, 2013, at 2800 Mount Kennedy. In that same indictment, defendant-herein, Kevin, and Tommie Molette were charged with second degree murder and attempted second degree murder for their involvement in a subsequent shooting incident that occurred on October 8, 2013, at 5923 Becker Street.
For clarity and completeness in addressing defendant's assignments of error, this opinion includes all of the germane testimony elicited at trial regarding five shooting incidents connected by ballistics and/or testimony to two groups of people. The first incident occurred on June 22, 2013, when A.P. was fired on while driving his girlfriend, J.A.'s, vehicle. Testimony reflected that A.P. was targeted because he had been deemed a "rat."[3] Ballistics were not recovered from that event.
The second incident occurred on July 13, 2013, at approximately 9:45 p.m. at the Ridgefield Apartments on Mount Kennedy Drive in Marrero. During the Mount Kennedy incident, J., the two-year-old son of A.P. and J.A., was shot in the chest. J.A., the child's mother, testified that, "Kevias [Hicks'] face was the face in the front that I saw" shooting at her son and her that night. J.A. also saw Kedrick Anderson with a "big gun" that night. J.A. stated that she did not see Kevin Hicks that night.[4] Ballistics matched spent 9-mm shell casings recovered from the Mount Kennedy scene to two later shootings: the Bridge shooting and the Becker Street shooting.[5]
The third incident was a shooting that occurred on the Crescent City Connection on July 16, 2013. During that incident, defendant-herein was shot by someone riding in a nearby vehicle. Neither defendant-herein nor Kedrick Anderson, who was also in the car, would identify the assailant. However, J.A. testified that, at some point, A.P. told her that he and defendant-herein were shooting at each other on the "bridge." A spent 9-mm shell casing found inside the Hicks' vehicle matched the ballistics of casings found at the Mount Kennedy and Becker Street shootings.
In the fourth incident, which occurred on August 12, 2013, at the Beechgrove *1287 Apartments in Westwego, Aubrieon Davis, who is the mother of Kedrick Anderson's son, was fired upon by A.P. while she was driving. Subsequently, A.P. pled guilty to aggravated assault with a firearm on Aubrieon Davis for that incident. Ballistics from the .40 caliber casing recovered at Beechgrove matched a casing found in the roadway after the Bridge shooting on July 16, 2013.
Finally, the fifth shooting event occurred on October 8, 2013, at 5923 Becker Street in Marrero. The surviving victim, Jonquell Neal, testified that he and his friend, Deshon Evans, were recording rap music in a studio at Deshon's house, when they heard a knock at the front door. Evans opened the door to Kevin Hicks, Tommie Molette, and defendant-herein. Neal remembered that when defendant-herein came to the door, he said something about running from another shooting where a child had been shot. After the men talked for a little while, they decided to record a song in Deshon's studio.
After they had been rapping and recording for a while in the studio, Neal heard defendant-herein say that he was a "god" and that "your life is in my hands." Neal was concerned but continued writing his song. When he heard a loud sound, Neal thought it was the music at first. But when Neal looked up, Evans' blood was all over him, and Evans was dead. Neal saw Kevin, Molette, and defendant-herein shooting in Evans' direction.
Neal testified that, after he was shot, he picked up Evans' firearm from the floor, and put it in his lap. When Kevin tried to shoot him, Neal raised Evans' weapon, "let off a shot," and Kevin left. Neal stated that more than twenty-five or thirty shots were fired.
That night, Neal received four gunshot wounds in his shoulder, thigh, and "feet." Immediately after the shooting, Neal positively identified Kevin, Molette, and defendant-herein as the shooters from photographic lineups. Neal further reported in his statement at the hospital to Sergeant Gary Barteet of the Jefferson Parish Sheriff's Office ("JPSO") that defendant-herein was shooting a 9-mm Smith and Wesson, that Kevin was using a 9-mm Beretta, and that Molette was using a .40 caliber Colt. At trial, Neal testified that he was "100% sure" that Kevin, Molette, and defendant-herein were the individuals who shot Evans and him that night.
Dr. Susan Garcia of the Jefferson Parish Forensic Center, who was accepted as an expert in the field of forensic pathology, conducted the autopsy on Deshon Evans. She explained that Deshon Evans' cause of death was multiple gunshot wounds,[6] including a lethal wound to the head, and that his manner of death was homicide.
Special Agent William Charles Williams of the FBI was accepted as an expert in the field of historical cell site analysis. Agent Williams analyzed historical records for two phone numbers - one associated with Kevin Hicks and one associated with Molette - for the early morning hours of October 8, 2013. According to Agent Williams, both phones utilized the cellular phone tower nearest to 5932 Becker Street numerous times between 1:04 a.m. and *1288 1:41 a.m. Williams testified that further data was consistent with both phones leaving the area around Becker, traveling along the Westbank Expressway, over the Mississippi River via the Crescent City Connection, and traveling north to the New Orleans East area. Williams testified that both phones were utilizing the nearest tower to 7840 Mills Avenue in New Orleans East between 2:52 a.m. and 2:54 a.m. The Mills Avenue address in New Orleans is associated with defendant's mother.
In order to connect the incidents, the State presented evidence regarding spent cartridge casings recovered at the scenes of the Mount Kennedy, the Beechgrove, the Bridge, and the Becker Street shootings. JPSO Deputy Jené Rauch, who is the supervisor of the firearms and tool mark section for the JPSO Crime Lab, was accepted as an expert in the field of firearm and tool mark examination.
Deputy Rauch testified that, after the July 13, 2013 Mount Kennedy shooting, fourteen casings that were fired "in the same" 9-mm weapon were recovered. Further, 2 casings were recovered that had been fired from a second 9-mm firearm. Also, eight 7.62 by 39-mm caliber casings were recovered that were all fired "in the same weapon." Finally, one .45 caliber casing was found on the scene.
Deputy Rauch testified that, after the July 16, 2013 shooting on the Crescent City Connection Bridge, two casings were recovered: a 9-mm casing recovered from inside of the Hicks' vehicle and a .40 caliber casing recovered from the roadway of the Bridge. Ballistics revealed that the .40 caliber casing at Beechgrove was fired from the same .40 caliber pistol used during the shooting on the Bridge that injured defendant-herein.
Deputy Rauch further testified that, after the Becker Street shooting in October 2013, eight 9-mm casings were recovered that had been fired from the same 9-mm pistol. Next, four 9-mm casings were recovered that had been fired from a second 9-mm pistol. Also, thirteen casings fired from a .40 caliber pistol were recovered. Finally, a .45 caliber Taurus pistol was recovered from the scene but ballistics confirmed that it was damaged by a bullet during the shooting, which prevented it from firing that night.
Deputy Rauch testified that the ballistics database used by law enforcement connected one 9-mm firearm to the shootings at Mount Kennedy on July 13, 2013; on the Crescent City Connection Bridge on July 16, 2013; on Becker Street on October 8, 2013; and at the scene of a homicide at I-10 and Clearview Parkway on December 30, 2013. At Mount Kennedy, fourteen 9-mm rounds were shot from this weapon. After the Bridge shooting, one expended 9-mm casing from this weapon was found on the floor of the interior of the vehicle driven by the Hicks' brothers that night. At Becker Street, eight 9-mm rounds were shot from this weapon. Finally, three casings fired from this weapon were found at the Clearview/I-10 homicide but further investigation revealed that the December homicide was not linked to the instant crimes.[7]
JPSO Deputy Chief Timothy Scanlan, who is the Commander of the Technical Services Bureau, was accepted as an expert in the fields of firearms and tool mark examination, blood stain pattern analysis, and crime scene reconstruction. Deputy Chief Scanlan investigated the Mount Kennedy and Becker Street crime scenes and formulated conclusions. Deputy Chief *1289 Scanlan asserted that Jonquell Neal's testimony was consistent with the cartridge case distribution and the angles of fire at the Becker Street crime scene. He also asserted that after reviewing reports of the Mount Kennedy scene, what he found there was consistent with the description of events provided by J.A.
After hearing the testimony and evidence, the twelve-person jury found defendant-herein guilty of the second degree murder of Deshon Evans; the attempted second degree murder of Jonquell Neal; the attempted second degree murder of J.; and the attempted second degree murder of J.A. Defendant-herein appeals his convictions.
Discussion
On appeal, defendant raises two assignments of error: first, defendant contends that the evidence was insufficient to prove his guilt on any count, and second, defendant argues that his consecutive sentence of life plus fifty years is unconstitutionally excessive.
In his first assignment of error, defendant argues that the trial court erred in failing to grant both his Motion for New Trial and his "motion for post-verdict judgment of acquittal" based on insufficient evidence. With respect to the Becker Street shootings, defendant contends that only one witness - the surviving victim, Jonquell Neal - identified him as one of the assailants. Defendant asserts that, although Neal's testimony corroborated the ballistic evidence, Neal was impeached because he admitted to hiding a gun in the house before the police arrived.
As to the Mount Kennedy shootings, defendant argues that the only witness who identified him was J.A., who never told the same version of her story twice, but consistently protected the father of her four children, A.P., from culpability.
Defendant further notes that the ballistics evidence reflects that the 9-mm weapon attributed to one of the Hicks brothers was used after he was incarcerated in December of 2013, and, thus, casts reasonable doubt on his involvement in these crimes. He argues that there was no DNA, fingerprints, or other physical evidence to link him to any of the crimes.
The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821.[8] With regards to the motion for new trial, this Court has recognized that the denial of a motion for new trial based on the verdict being contrary to the law and evidence is not subject to review on appeal; however, both the Louisiana Supreme Court and this Court have still addressed sufficiency claims under these circumstances. State v. Bazley , 09-358 (La. App. 5 Cir. 1/11/11), 60 So.3d 7, 18-19, writ denied , 11-282 (La. 6/17/11), 63 So.3d 1039.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Neal , 00-0674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied , 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).
In cases involving circumstantial evidence, the trial court must instruct the jury that, "assuming every fact to be *1290 proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell , 99-3342 (La. 10/17/00), 772 So.2d 78, 83 ; State v. Washington , 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.
On appeal, defendant does not argue that the State failed to prove the elements of the offenses, but rather challenges the State's failure to prove his identity as the perpetrator. As it is the only issue raised, it is the only issue that we will address.
Defendant was convicted of one count of second degree murder and three counts of attempted second degree murder. La. R.S. 14:30.1 provides that second degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." State v. Holmes , 12-579 (La. App. 5 Cir. 5/16/13), 119 So.3d 181, 191, writ denied , 13-1395 (La. 1/10/14), 130 So.3d 318. Specific intent need not be proven as a fact but may be inferred from the circumstances surrounding the offense and the defendant's conduct. Id. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person, as well as the extent and severity of the victim's injuries. Id. In order to convict a defendant of attempted second degree murder, the State must prove beyond a reasonable doubt that the defendant had the specific intent to kill and that he committed an overt act in furtherance of that goal. State v. Bishop , 01-2548 (La. 1/14/03), 835 So.2d 434, 437.
Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Ray , 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, writ denied , 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
As to the Becker Street shootings, the surviving victim, Jonquell Neal, testified at trial that defendant-herein, Kevin, and Molette attempted to kill him and also killed Evans. He was "100%" positive that the three defendants were the perpetrators that shot him four times after shooting Deshon Evans. There was no reasonable hypothesis of innocence presented.
As to the Mount Kennedy shootings, J.A. testified at trial that she and her two-year-old son, J., were walking toward their apartment from their car when she saw defendant-herein and Anderson, whom she knew from their neighborhood, shoot at them. Again, there was no reasonable hypothesis of innocence presented.
Additionally, Chief Scanlan testified that Neal's testimony was consistent with the cartridge case distribution and the angles of fire at the Becker Street crime scene. He also asserted that, after reviewing reports of the Mount Kennedy scene, J.A.'s description of the events was consistent with the distribution of casings found at that crime scene.
Under Louisiana law, a victim's or witness' testimony alone is usually sufficient to support the verdict. State v. Munson , 12-327 (La. App. 5 Cir. 4/10/13), 115 So.3d 6, 13, writ denied , *1291 13-1083 (La. 11/22/13), 126 So.3d 476. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Turner , 05-75 (La. App. 5 Cir. 5/31/05), 904 So.2d 816, 823, writ denied , 05-2591 (La. 5/26/06), 930 So.2d 20. Here, there was no internal contradiction or irreconcilable conflict with the physical evidence presented at trial of these counts.
Further, although defendant argues that the testimony of Neal and J.A. were not credible, the jury heard the testimony and obviously found the State's witnesses to be credible. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. State v. Rowan , 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to prove that defendant was the perpetrator of the offenses and that the State negated any reasonable probability of misidentification. Accordingly, this assignment of error lacks merit.
In his second assignment of error, defendant argues that the trial court erred by imposing consecutive sentences. He contends that the meaningless compounding of sentences does nothing for any legitimate state or community interest. Defendant further contends that the trial court's justification for consecutive sentences - that the two shootings occurred months apart - is not sufficient to impose an excessive sentence of life plus fifty years.
Defendant was convicted of one count of second degree murder and three counts of attempted second degree murder. The sentence for a conviction of second degree murder is life imprisonment at hard labor, and the sentence for a conviction of attempted second degree murder is fifty years at hard labor. See La. R.S. 14:30.1 ; La. R.S. 14:27. The trial judge sentenced defendant to life imprisonment on count one and fifty years imprisonment each on counts two, three, and four. He ordered the sentences on counts one and two to run concurrently with one another, and he ordered the sentences on counts three and four to run concurrently with one another. The trial judge then ordered the sentences on counts three and four to run consecutively to the sentences on counts one and two.
Following sentencing, defense counsel filed a motion to reconsider the sentences as they are unconstitutionally excessive as imposed. The trial judge denied that motion, stating:
Sure. As it relates to the motion to reconsider the sentences concerning Mr. Kevias Hicks, as it relates to the excessiveness and unconstitutionality of the life sentence for second-degree murder, it is an issue that has been resolved. It is clearly not an excessive sentence. With regard to the consecutive nature of the sentences on counts 3 and 4, this Court sat through a multiple day trial at which this Court heard testimony about Mr. Kevias Hicks' participation in two separate shootings, one of which involved the shooting of a young-two year old child and then the separate shooting that involved the shooting and killing of an individual and the attempted murder of another. Two separate instances, two separate scenes months apart, one in July and one in October, clearly not part of the same action, two separate actions, two separate times that Mr. Kevias Hicks saw it fit to pull out a gun and shoot what ultimately amounted to three actual individuals being shot, one dieing [sic] and another fortunately for her being *1292 missed but just by shear [sic] luck. If ever there was an appropriate scenario for a consecutive sentence, this is certainly the scenario in which a consecutive sentence ought to be had and therefore, the Court denies the motion to reconsider the sentence as it relates to that.
On appeal defendant argues that the consecutive nature of his sentences makes them excessive. The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith , 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson , 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Dorsey , 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130, writ denied , 08-1649 (La. 4/17/09), 6 So.3d 786. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson , 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
La. C.Cr.P. art. 883 provides as follows:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
"Consecutive sentences are indicated under Article 883" where the bills of information allege offenses that occurred on different dates and at different locations. See State v. Wilson , 99-105 (La. App. 5 Cir. 7/27/99), 742 So.2d 957, 959, writ denied , 99-2583 (La. 2/11/00), 754 So.2d 935.
In State v. Williams , 10-265 (La. App. 5 Cir. 11/9/10), 54 So.3d 98, 105, this Court found that even if the excessiveness issue regarding the consecutive nature of the sentences had been properly preserved, such claim had no merit as the bill of information alleged offenses that occurred on different dates to two different juveniles at different locations.
In State v. Page , 02-689 (La. App. 5 Cir. 1/28/03), 837 So.2d 165, writ denied , 03-0951 (La. 11/7/03), 857 So.2d 517, the defendant's convictions resulted from four separate courses of conduct that occurred on four separate days over a one-month period. The defendant received concurrent sentences on those counts arising from a single course of conduct. His four groups of sentences were then ordered to run consecutively with each other. This Court found that the defendant's consecutive sentences *1293 were justified and imposed in accordance with La. C.Cr.P. art. 883, noting that the victims were placed in grave danger and could easily have been killed.
In the instant case, we find that defendant's consecutive sentences were justified and imposed in accordance with La. C.Cr.P. art. 883. Defendant's convictions resulted from two separate courses of conduct that occurred on separate days at separate locations approximately three months apart. Defendant committed two counts of attempted second degree murder in July of 2013 and committed second degree murder and attempted second degree murder in October of 2013. We find that the trial court did not err by ordering the sentences to run consecutively. Accordingly, this assignment of error lacks merit.
Errors patent
As is our routine practice, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
We note that neither the transcript nor the commitment reflects that the trial judge advised defendant of the provisions of La. C.Cr.P. art. 930.8. It is well-settled that if a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, this Court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely , 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied , 09-0248 (La. 10/30/09), 21 So.3d 272. Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. Based on the foregoing, defendant's convictions and sentences are hereby affirmed.
AFFIRMED .

In the same bill of indictment, the Jefferson Parish District Attorney also charged Kevin Hicks and Tommie Molette a/k/a Tucker Molette with the second degree murder of Deshon Evans (count one) and the attempted second degree murder of Jonquell Neal (count two). Further, in that same indictment, the grand jury indicted Kedrick Anderson and Kevin Hicks for the attempted second degree murder of a known juvenile (hereinafter "J.") and attempted second degree murder of his mother, J.A., in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (counts three and four respectively). The co-defendants all have appeals pending before this Court: State v. Kevin Hicks , 17-696 (La. App. 5 Cir. 10/17/18), 257 So.3d 1283; State v. Tommie Molette , 17-697 (La. App. 5 Cir. 10/17/18), --- So.3d ---- ; and State v. Anderson , 18-45 (La. App. 5 Cir. 10/17/18), --- So.3d ----.
Further, throughout this opinion, we will use the juvenile victim's and his family's initials to protect the identity of the juvenile crime victim. La. R.S. 46:1844(W)(3). The minor will be referred to by his first initial, J., and his mother will be referred to by her initials, J.A. See State v. Lirette , 11-1167 (La. App. 5 Cir. 6/28/12), 102 So.3d 801, 804, n.1, writ denied , 12-1694 (La. 2/22/13), 108 So.3d 763.

The Hicks brothers and Tommie Molette were tried together. Anderson, who was not charged with second degree murder, was tried separately from the other three co-defendants.

In 2010, A.P. and Richshawn Williams, an associate of the Hicks brothers, were charged with multiple counts of armed robbery. In 2011, A.P. pled guilty to one count of the lesser charge of accessory after the fact to armed robbery in exchange for a reduced sentence of three years; Williams pled guilty to one count of armed robbery in exchange for a sentence of twenty years. The disparity in their sentences created tension between A.P. and Williams.

Originally, J.A. positively identified Kevin, Kevias, and Anderson from photographic lineups as the shooters. However, at trial, she testified that she did not recall seeing Kevin's face.

A full discussion of ballistics evidence presented at trial is presented infra .

Dr. Garcia testified that Deshon Evans received six gunshot wounds : a projectile entered the upper left chest near the arm pit and exited through his arm; a projectile entered the left forearm and exited through his back; another projectile entered the forearm and exited above the wrist; a projectile entered the back side of the right thigh going through the muscle and exiting the thigh; a fifth projectile entered decedent's cheek going from right to left but did not exit; and the sixth projectile was the lethal wound to the right side of the head that penetrated his brain. Dr. Garcia recovered intact projectiles from the decedent's brain.

Trial testimony revealed that an unrelated defendant pled guilty to the December homicide on Clearview Parkway at I-10.

Here, defendant filed both a Motion for Acquittal Notwithstanding the Verdict and a Motion for New Trial in the district court, challenging the sufficiency of the evidence used to convict him, which the trial court denied.