CHEHARDY, C.J.
*1042 On appeal, defendant challenges the trial court's denial of his motion to sever his trial from that of his co-defendants and the trial court's denial of his motion for mistrial. For the following reasons, we affirm.
Procedural History
On January 23, 2014, a Jefferson Parish Grand Jury indicted defendant, Kevin Hicks, with the second degree murder of Deshon Evans, in violation of La. R.S. 14:30.1 (count one), and the attempted second degree murder of Jonquell Neal, in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count two). Further, in that same indictment, the grand jury indicted Kevin Hicks for the attempted second degree murder of a known juvenile (hereinafter "J.") and the attempted second degree murder of his mother, J.A., in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (counts three and four respectively).[1]
On May 22, 2017, trial commenced before a twelve-person jury.[2] After a six-day trial, the jury found defendant guilty as charged for the second degree murder of Deshon Evans and the attempted second degree murder of Jonquell Neal, but acquitted defendant on the remaining charges of attempted second degree murder of J. and J.A. On June 26, 2017, the trial judge sentenced defendant for second degree murder to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and, for attempted second degree murder, to imprisonment at hard labor for fifty years without benefit of parole, probation, or suspension of sentence, to run concurrently. Thereafter, defendant filed a timely notice of appeal, which was granted.
Facts
In this case, Kevin Hicks, defendant-herein, and his brothers, Kevias Hicks and *1043 Kedrick Anderson, were indicted on two counts of attempted second degree murder for their involvement in a shooting incident that occurred on July 13, 2013, at 2800 Mount Kennedy. In that same indictment, defendant-herein, Kevias, and Tommie Molette were charged with second degree murder and attempted second degree murder for their involvement in a subsequent shooting incident that occurred on October 8, 2013, at 5923 Becker Street.
For clarity and completeness in addressing defendant's assignments of error, this opinion includes all of the germane testimony elicited at trial regarding five shooting incidents connected by ballistics and/or testimony to two groups of people. The first incident occurred on June 22, 2013, when A.P. was fired on while driving his girlfriend, J.A.'s, vehicle. Testimony reflected that A.P. was targeted because he had been deemed a "rat."[3] Ballistics were not recovered from that event.
The second incident occurred on July 13, 2013, at approximately 9:45 p.m. at the Ridgefield Apartments on Mount Kennedy Drive in Marrero. During the Mount Kennedy incident, J., the two-year-old son of A.P. and J.A., was shot in the chest. J.A., the child's mother, testified that, "Kevias [Hicks'] face was the face in the front that I saw" shooting at her son and her that night. J.A. also saw Kedrick Anderson with a "big gun" that night. J.A. stated that she did not see Kevin Hicks that night.[4] Ballistics matched spent 9-mm shell casings recovered from the Mount Kennedy scene to two later shootings: the Bridge shooting and the Becker Street shooting.[5]
The third incident was a shooting that occurred on the Crescent City Connection on July 16, 2013. During that incident, Kevias Hicks was shot by someone riding in a nearby vehicle. Neither Kevias nor Kedrick Anderson, who was also in the car, would identify the assailant. However, J.A. testified that, at some point, A.P. told her that he and Kevias were shooting at each other on the "bridge." A spent 9-mm shell casing found inside the Hicks' vehicle matched the ballistics of casings found at the Mount Kennedy and Becker Street shootings.
In the fourth incident, which occurred on August 12, 2013, at the Beechgrove Apartments in Westwego, Aubrieon Davis, who is the mother of Kedrick Anderson's son, was fired upon by A.P. while she was driving. Subsequently, A.P. pled guilty to aggravated assault with a firearm on Aubrieon Davis for that incident. Ballistics from the .40 caliber casing recovered at Beechgrove matched a casing found in the roadway after the Bridge shooting on July 16, 2013.
Finally, the fifth shooting event occurred on October 8, 2013, at 5923 Becker Street in Marrero. The surviving victim, Jonquell Neal, testified that he and his friend, Deshon Evans, were recording rap music in a studio at Deshon's house, when they heard a knock at the front door.
*1044 Evans opened the door to Kevias Hicks, Tommie Molette, and defendant-herein. Neal remembered that when Kevias came to the door, he said something about running from another shooting where a child had been shot. After the men talked for a little while, they decided to record a song in Deshon's studio.
After they had been rapping and recording for a while in the studio, Neal heard Kevias say that he was a "god" and that "your life is in my hands." Neal was concerned but continued writing his song. When he heard a loud sound, Neal thought it was the music at first. But when Neal looked up, Evans' blood was all over him, and Evans was dead. Neal saw Kevias, Molette, and defendant-herein shooting in Evans' direction.
Neal testified that, after he was shot, he picked up Evans' firearm from the floor, and put it in his lap. When defendant-herein tried to shoot him, Neal raised Evans' weapon, "let off a shot," and defendant-herein left. Neal stated that more than twenty-five or thirty shots were fired.
That night, Neal received four gunshot wounds in his shoulder, thigh, and "feet." Immediately after the shooting, Neal positively identified Kevias, Molette, and defendant-herein as the shooters from photographic lineups. Neal further reported in his statement at the hospital to Sergeant Gary Barteet of the Jefferson Parish Sheriff's Office ("JPSO") that Kevias was shooting a 9-mm Smith and Wesson, that defendant-herein was using a 9-mm Beretta, and that Molette was using a .40 caliber Colt. At trial, Neal testified that he was "100% sure" that Kevias, Molette, and defendant-herein were the individuals who shot Evans and him that night.
Dr. Susan Garcia of the Jefferson Parish Forensic Center, who was accepted as an expert in the field of forensic pathology, conducted the autopsy on Deshon Evans. She explained that Deshon Evans' cause of death was multiple gunshot wounds,[6] including a lethal wound to the head, and that his manner of death was homicide.
Special Agent William Charles Williams of the FBI was accepted as an expert in the field of historical cell site analysis. Agent Williams analyzed historical records for two phone numbers - one associated with defendant-herein and one associated with Molette - for the early morning hours of October 8, 2013. According to Agent Williams, both phones utilized the cellular phone tower nearest to 5932 Becker Street numerous times between 1:04 a.m. and 1:41 a.m. Williams testified that further data was consistent with both phones leaving the area around Becker, traveling along the Westbank Expressway, over the Mississippi River via the Crescent City Connection, and traveling north to the New Orleans East area. Williams testified that both phones were utilizing the nearest tower to 7840 Mills Avenue in New Orleans East between 2:52 a.m. and 2:54 a.m. The Mills Avenue address in New Orleans is associated with defendant's mother.
In order to connect the incidents, the State presented evidence regarding spent cartridge casings recovered at the scenes of the Mount Kennedy, the Beechgrove, *1045 the Bridge, and the Becker Street shootings. JPSO Deputy Jené Rauch, who is the supervisor of the firearms and tool mark section for the JPSO Crime Lab, was accepted as an expert in the field of firearm and tool mark examination.
Deputy Rauch testified that, after the July 13, 2013 Mount Kennedy shooting, fourteen casings that were fired "in the same" 9-mm weapon were recovered. Further, 2 casings were recovered that had been fired from a second 9-mm firearm. Also, eight 7.62 by 39-mm caliber casings were recovered that were all fired "in the same weapon." Finally, one .45 caliber casing was found on the scene.
Deputy Rauch testified that, after the July 16, 2013 shooting on the Westbank Expressway, two casings were recovered: a 9-mm casing recovered from inside of the Hicks' vehicle and a .40 caliber casing recovered from the roadway of the Expressway. Ballistics revealed that the .40 caliber casing at Beechgrove was fired from the same .40 caliber pistol used during the shooting on the Westbank Expressway that injured Kevias Hicks.
Deputy Rauch further testified that, after the Becker Street shooting in October 2013, eight 9-mm casings were recovered that had been fired from the same 9-mm pistol. Next, four 9-mm casings were recovered that had been fired from a second 9-mm pistol. Also, thirteen casings fired from a .40 caliber pistol were recovered. Finally, a .45 caliber Taurus pistol was recovered from the scene but ballistics confirmed that it was damaged by a bullet during the shooting, which prevented it from firing that night.
Deputy Rauch testified that the ballistics database used by law enforcement connected one 9-mm firearm to the shootings at Mount Kennedy on July 13, 2013; on the Crescent City Connection Bridge on July 16, 2013; on Becker Street on October 8, 2013; and at the scene of a homicide at I-10 and Clearview Parkway on December 30, 2013. At Mount Kennedy, fourteen 9-mm rounds were shot from this weapon. After the Bridge shooting, one expended 9-mm casing from this weapon was found on the floor of the interior of the vehicle driven by the Hicks brothers that night. At Becker Street, eight 9-mm rounds were shot from this weapon. Finally, three casings fired from this weapon were found at the Clearview/I-10 homicide but further investigation revealed that the December homicide was not linked to the instant crimes.[7]
JPSO Deputy Chief Timothy Scanlan, who is the Commander of the Technical Services Bureau, was accepted as an expert in the fields of firearms and tool mark examination, blood stain pattern analysis, and crime scene reconstruction. Deputy Chief Scanlan investigated the Mount Kennedy and Becker Street crime scenes and formulated conclusions. Deputy Chief Scanlan asserted that Jonquell Neal's testimony was consistent with the cartridge case distribution and the angles of fire at the Becker Street crime scene. He also asserted that after reviewing reports of the Mount Kennedy scene, what he found there was consistent with the description of events provided by J.A.
After hearing the testimony and evidence, the twelve-person jury found defendant-herein guilty of the second degree murder of Deshon Evans and the attempted second degree murder of Jonquell Neal, but not guilty of the attempted second *1046 degree murder of J. and J.A. Defendant-herein appeals his convictions.
Discussion
On appeal, defendant raises three[8] assignments of error: first, the trial court erred in denying his motion to sever counts; second, the trial court erred in denying his motion to sever defendants; and third, the trial court erred in denying the motion for mistrial after the witness' reference to defendant's exercise of his post-arrest right to remain silent.
Motion to Sever Counts/Offenses
Defendant argues that the trial judge erred by denying the Motion to Sever Counts because the crimes were different since the Becker Street shootings involved violence between adult males, but the Mount Kennedy shootings involved violence directed at a woman and child. Defendant, who concedes that he was acquitted of the Mount Kennedy shootings, argues that the evidence surrounding that shooting was extremely prejudicial, and, therefore, should have been severed in the interest of justice.
The State responds that the offenses were properly joined under La. C.Cr.P. art. 493, in that they were of the same or similar character given that they were all shootings. The State also notes that the offenses were linked because the defendants obtained access to the Becker Street residence by claiming to be on the run from the Mount Kennedy shooting and ballistics links one of the 9-mm guns used at Becker Street to the Mount Kennedy shootings. The State further points out that defendant has not met his "heavy burden" of showing prejudice, as his acquittal of the Mount Kennedy shootings indicates that the jury was able to set aside its emotions and evaluate each offense on its own merits. Finally, the State asserts that evidence of the Mount Kennedy shootings and other incidents related to the "beef" between A.P. and the Hicks brothers completes the events leading to the Becker Street shootings and would have been admissible at the trial of both crimes.
In his pre-trial Motion to Sever the Counts, defendant argued that the defendants[9] and the counts should be severed because a large amount of "very convoluted" evidence, which applied to some defendants but not all of them, would be very difficult for a jury to understand.
At the hearing, the trial judge stated that he was not confused with regard to the charges in the indictment, and he did not see how a jury would be confused. He also stated that there were two separate and distinct dates, July 13, 2013 and October 8, 2013, for the different counts. The trial judge denied defendant's motion to sever the counts.
La. C.Cr.P. art. 493 permits the joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan" and the offenses are triable by the same mode of trial. La. C.Cr.P. art. 495 provides that, "[t]he objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment." La. C.Cr.P. art. 532 provides in pertinent part that a motion to quash may be based on one or more of the following grounds:
* * * *
(3) The indictment is duplicitous or contains a misjoinder of defendants or *1047 offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.
A defendant properly charged in the same indictment with two or more offenses pursuant to La. C.Cr.P. art. 493 may nonetheless move for a severance of the offenses under La. C.Cr.P. art. 495.1, which provides as follows:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
In determining whether prejudice results from a joinder of offenses, the trial court must consider the following factors: whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Fontenberry , 09-127 (La. App. 5 Cir. 10/27/09), 27 So.3d 904, 909-10, writ denied , 09-2665 (La. 5/28/10), 36 So.3d 246. In addition, it must be considered that prejudice from the joinder of offenses can be mitigated by clear jury instructions and by an orderly presentation of evidence by the State. State v. Davis , 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84, writ denied , 13-1205 (La. 11/22/13), 126 So.3d 479.
A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof. Motions to sever under La. C.Cr.P. art. 495.1 are within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of discretion. Factual, rather than conclusory, allegations are required when the defendant alleges prejudicial joinder of offenses on a motion to sever. Fontenberry , 27 So.3d at 910. Finally, there is no prejudicial effect from joinder of offenses when the evidence of each is relatively simple and distinct so that the jury can easily keep the evidence of each offense separate in its deliberations. State v. Butler , 15-89 (La. App. 5 Cir. 7/29/15), 171 So.3d 1283, 1288, writ denied , 15-1608 (La. 10/10/16), 207 So.3d 408. In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. State v. Deruise , 98-0541 (La. 4/3/01), 802 So.2d 1224, 1232, cert. denied , 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001).
In the instant case, we find that the counts were not misjoined under La. C.Cr.P. art. 493 as the shootings were "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan" and the offenses are triable by the same mode of trial. Importantly, when defendants arrived at the Becker Street address, Kevias indicated they were on the run from the Mount Kennedy shooting. Further, the two incidents were linked in that one of the 9-mm firearms used at Becker Street was also used at the Mount Kennedy shooting.
Further, defendant did not meet his heavy burden of proving prejudice under La. C.Cr.P. art. 495.1. The evidence of each crime was presented in an orderly fashion. Additionally, the trial judge charged the jury separately as to each offense, explaining in detail what the State *1048 was required to prove with respect to each count. The jury was instructed to consider each charge for each victim separately.[10] Also, the jury was provided with separate verdict sheets for each defendant and each victim.[11] Further, the jury was able to segregate the various charges and evidence as it acquitted defendant-herein of the Mount Kennedy shootings. See State v. Seay , 521 So.2d 1206, 1210 (La. App. 2nd Cir. 1988) ("if the jury can keep the evidence of the offenses separate and distinct, as evidenced by acquittal on some and conviction on other charges, there is no prejudice."). Accordingly, we find that these offenses did not warrant a severance, and, thus, the trial judge did not abuse his discretion in denying defendant's Motion to Sever the Counts.
Motion to Sever Defendants
Defendant also argues that the trial judge erred by denying the Motion to Sever Defendants, which resulted in the jury hearing extraneous and highly prejudicial evidence of other acts of criminal violence committed by his co-defendants. He argues that, during the "mass trial," the jury heard salacious details about "the drive-by shooting at Aubrieon Davis' vehicle;" a drive-by shooting on the Crescent City Connection in which his brother and co-defendant, Kevias, was shot; the attempted murder of J.A. and her two-year-old son, J.; and a homicide at I-10 and Clearview. He asserts that admission of that evidence deprived him of his rights of due process, a fair trial, and the right to remain silent. Defendant argues that the denial of the motion to sever the defendants was an abuse of discretion resulting in clear harm so egregious as to mandate reversal.
The State responds that the trial court did not err by denying defendant's request for severance from his co-defendants as defendant has not demonstrated unfair prejudice. Further, joinder of the defendants was proper given a broad reading of La. C.Cr.P. art. 494. The State notes that Kevin was charged in all four crimes and failed to show or allege antagonistic defenses necessary for severance from co-defendants under La. C.Cr.P. art. 704. The State submits that the other shootings referred to by defendant were relevant and evidence of these incidents would have been admissible in a separate trial of Kevin.
In his Motion to Sever Defendants, defendant-herein moved for a separate trial from his co-defendants on the basis that he would be prejudiced by evidence to be introduced by the State which, while admissible against his co-defendants, may be inadmissible against him. He also asserted that the jury would have insurmountable difficulty in distinguishing his alleged acts *1049 from the alleged acts of the co-defendants. The trial judge denied the motion finding no prejudice.
La. C.Cr.P. art. 494 provides the law regarding joinder of defendants:
Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
As was stated above, La. C.Cr.P. art. 495 provides that, "[t]he objections of misjoinder of defendants or misjoinder of offenses may be urged only by a motion to quash the indictment."
La. C.Cr.P. art. 704 provides the following regarding severance:
Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm , 446 So.2d 729, 741 (La. 1984) ; State v. Condley , 04-1349 (La. App. 5 Cir. 5/31/05), 904 So.2d 881, 890, writ denied , 05-1760 (La. 2/10/06), 924 So.2d 163. A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. A denial of a motion to sever will not be overturned absent a clear abuse of discretion. Id.
A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. Prudholm , 446 So.2d at 741 ; Condley , 904 So.2d at 890. The defendant bears the burden of proof in a motion to sever. State v. Jackson , 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 851-52, writ denied , 04-1399 (La. 11/8/04), 885 So.2d 1118. The mere unsupported allegation that defenses will be antagonistic is not sufficient to require a severance. Prudholm , 446 So.2d at 741. Reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. State v. Cedrington , 98-253 (La. App. 5 Cir. 12/16/98), 725 So.2d 565, 577, writs denied , 99-190 (La. 6/4/99), 743 So.2d 1249 and 99-431 (La. 6/25/99), 745 So.2d 1182. Antagonistic defenses are not the only instances where the denial of a motion to sever will constitute an abuse of discretion. Where the ends of justice will be best served by severance, it should be granted. Id.
Prejudice may occur in a joint trial "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." State v. Williams , 16-417 (La. App. 5 Cir. 8/30/17), 227 So.3d 371, 395 (quoting Zafiro v. United States , 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) ).
In Williams , supra , this Court found that the fact that the defendant did not participate in the murder of Donte Hall, a charge for which only his co-defendant was indicted, was not a consideration for the trial court in determining whether a severance was required. Williams , 227 So.3d at 395.
In the instant case, we find no error by the trial judge in denying the *1050 Motion to Sever Defendants. Kevias, Molette, and defendant-herein were not misjoined under La. C.Cr.P. art. 494 since they were alleged to have participated in the same act constituting the Becker Street offenses and Kevias and defendant-herein were not misjoined under that same statute as they were alleged to have participated in the same act constituting the Mount Kennedy offenses. Also, as was discussed previously, the Becker Street shootings and the Mount Kennedy shootings were related and linked so the relevant evidence of each offense would have been admissible at both trials.
Further, there is no evidence that the defenses of the co-defendants were mutually antagonistic. Moreover, defendant, who was acquitted of all counts of the Mount Kennedy shootings, has not shown how he was prejudiced by the lack of a severance. Moreover, as discussed above, the jury was instructed to consider each charge for each victim separately and was provided with separate verdict sheets for each defendant and each victim. Clearly, the jury was able to segregate the various charges and evidence as it acquitted defendant-herein on all counts of the Mount Kennedy shootings.
Piecemeal litigation is not sanctioned by the courts and, where the same witnesses would be called to testify, judicial economy dictates that there be one trial. Williams , 227 So.3d at 395 (citing Warren v. Bergeron , 599 So.2d 369 (La. App. 3rd Cir. 1992), cert. denied , 604 So.2d 995 (La. 1992) ). Accordingly, we find that the trial judge did not abuse his discretion in denying defendant's Motion to Sever Defendants.
In his third assignment of error, defendant argues that the trial court erred by denying the motion for mistrial based on a witness' reference to his exercise of his post-arrest right to remain silent. He contends that, because of the trial court's denial of the Motion to Sever Defendants, he was forced to proceed to trial with a co-defendant whose counsel made an issue of his post-arrest silence to his great detriment.
The State responds that a witness' indirect, isolated, and circumscribed reference to defendant-herein remaining silent after arrest did not warrant a mistrial. The State asserts that the witness' indirect reference, which was elicited during cross-examination by counsel for Kevias, likely "flew under the jury's radar, as it apparently flew under the radar of counsel for Kevias." The State points out that defense counsel for Kevias made the reference, not the prosecutor during direct or redirect examination, which further negated potential prejudice.
Finally, the State contends that, even if the witness' comment was considered a reference to defendant's exercise of his right to remain silent, that reference could not be considered sufficiently prejudicial to warrant the drastic remedy of a mistrial, where defendant-herein was acquitted of the Mount Kennedy crimes.
At trial, the following exchange occurred during the cross-examination of Sergeant Barteet by defense counsel for Kevias:
Q. And when you found Mr. Kevias Hicks, he did not have any of those things in his possession?
A. None of it came to me. He was arrested out of the area.
Q. But ultimately, he came into - -
A. I never saw him after his arrest. He declined to speak to me.
Q. Right. But he actually came into the station; do you recall that?
A. I don't recall. He didn't want to talk. I sat down with both the other *1051 individuals. I didn't sit down with Kevias.
Q. You were not present when [Kevias] exercised his right to remain silent?
A. I didn't advise him I don't believe. I don't recall.
Q. I just didn't know if you were present. I know there was another office. You are aware of that, correct?
A. It sounds right. They brought him in on transport. With Tommie Molette and Kevin Hicks I was there and present and I attempted to speak with them but Kevias, no.
Q. So it [sic] your testimony you don't know what he was wearing that day?
A. I have no clue.
Counsel for defendant-herein lodged an objection to the officer notifying the jury of defendant exercising his right to remain silent. She also asked for a mistrial arguing that defendant's Fifth Amendment privilege was violated by telling the jury that he exercised his right to remain silent. The trial judge refused to grant a mistrial but offered to admonish the jury, which defense counsel declined.
Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial. State v. Overton , 618 So.2d 439, 441 (La. App. 5th Cir. 1993). The decision to grant or deny a mistrial is within the sound discretion of the trial court. The denial of a motion for a mistrial will not be reversed on appeal unless the court has abused its discretion. State v. Ratcliff , 98-101 (La. App. 5 Cir. 2/23/99), 731 So.2d 356, 363, writ denied , 99-1112 (La. 9/3/99), 747 So.2d 541.
La. C.Cr.P. art. 775 provides that the trial court shall grant a mistrial when prejudicial conduct in or outside of the courtroom makes it impossible for the defendant to obtain a fair trial. La. C.Cr.P. art. 770 provides, in pertinent part, that:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * *
(3) The failure of the defendant to testify in his own defense;
* * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
As a general rule, Article 770 does not apply to testimony by a state witness, since a witness is not considered a "court official." State v. Lagarde , 07-123 (La. App. 5 Cir. 5/29/07), 960 So.2d 1105, 1113, writ denied , 07-1650 (La. 5/9/08), 980 So.2d 684.
In the instant case, the remark was not made by the prosecutor, the judge, or a court official. Further, there is no showing that the prosecutor purposefully introduced the complained of evidence. In fact, the record reflects that counsel for co-defendant Kevias elicited the statement from the witness that he "attempted to speak with" defendant-herein. Thus, La. C.Cr.P. art. 770 is inapplicable.
La. C.Cr.P. art. 771 provides, in pertinent part:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark *1052 is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
* * *
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In Doyle v. Ohio , 426 U.S. 610, 620, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that reference to a defendant's silence at the time of his arrest and after he has received Miranda[12] warnings for impeachment purposes violates the defendant's due process rights. The Supreme Court explained, "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested ... it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Doyle v. Ohio , 426 U.S. at 617-18, 96 S.Ct. at 2244-45, 49 L.Ed.2d at 97-98.
However, not every mention of the defendant's post-arrest silence is prohibited by Doyle . Doyle only condemns the use of defendant's silence at the time of arrest and after Miranda warnings for impeachment purposes. A prosecutor cannot make reference to the fact that an accused exercised his constitutional right to remain silent, after he had been advised of the right, solely to ascribe a guilty meaning to his silence or to undermine, by inference, an exculpatory version related by the accused, for the first time at trial. State v. Arvie , 505 So.2d 44, 46 (La. 1987) ; State v. Ledesma , 01-1413 (La. App. 5 Cir. 4/30/02), 817 So.2d 390, 393.
In contrast, an oblique and obscure reference to a defendant's post-arrest silence, where the examination does not stress the right to remain silent or attempt to elicit testimony regarding the defendant's failure to respond to police questioning, does not constitute reversible error. Ledesma , supra . A brief reference to a defendant's post-arrest silence does not mandate a mistrial or reversal when the trial as a whole was fairly conducted, the proof of guilt is strong, and the prosecution made no use of the silence for impeachment purposes. Ledesma , supra .
In the instant case, we find no error in the trial court's denial of defendant's motion for mistrial. First, this testimony was elicited by counsel for co-defendant, Kevias, and not by the State, and, thus, does not trigger La. C.Cr.P. art. 770. Further, it is unclear that the jury would infer from the witness' statement that he "attempted to speak with them" that defendant-herein had invoked his right to remain silent. The witness testified that he sat down with defendant-herein and Molette and attempted to speak to Molette and defendant-herein, but not Kevias. That statement would not necessarily indicate to the jury that Kevin refused to speak to him. Where, as here, the trial as a whole was fairly conducted, the proof of guilt was strong, and the prosecution made no use of the silence for impeachment purposes, this brief, vague reference to defendant's post-arrest silence does not mandate a mistrial or reversal. These assignments of error lack merit.
*1053 Errors patent
As is our routine practice, we have reviewed the record for errors patent, according to La. C.Cr.P. art. 920 ; State v. Oliveaux , 312 So.2d 337 (La. 1975) ; and State v. Weiland , 556 So.2d 175 (La. App. 5th Cir. 1990).
We note that neither the transcript nor the commitment reflects that the trial judge advised defendant of the provisions of La. C.Cr.P. art. 930.8. It is well-settled that if a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, this Court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Neely , 08-707 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied , 09-0248 (La. 10/30/09), 21 So.3d 272. Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922. Based on the foregoing, defendant's convictions and sentences are hereby affirmed.
AFFIRMED .

In the same bill of indictment, the Jefferson Parish District Attorney also charged Kevias C. Hicks and Tommie Molette a/k/a Tucker Molette with the second degree murder of Deshon Evans (count one) and the attempted second degree murder of Jonquell Neal (count two). Further, in that same indictment, the grand jury indicted Kedrick Anderson and Kevias Hicks for the attempted second degree murder of a known juvenile (hereinafter "J.") and attempted second degree murder of his mother, J.A., in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (counts three and four respectively). The co-defendants all have appeals pending before this Court: State v. Tommie Molette , 17-697 (La. App. 5 Cir. 10/17/18), 258 So.3d 1092, 2018 WL 5021205 ; State v. Anderson , 18-45 (La. App. 5 Cir. 10/17/18), 258 So.3d 1008, 2018 WL 5020643 ; and State v. Kevias C. Hicks, 18-46 (La. App. 5 Cir. 10/17/18), 257 So.3d 1283, 2018 WL 5020291.
Further, throughout this opinion, we will use the juvenile victim's and his family's initials to protect the identity of the juvenile crime victim. La. R.S. 46:1844(W)(3). The minor will be referred to by his first initial, J., and his mother will be referred to by her initials, J.A. See State v. Lirette , 11-1167 (La. App. 5 Cir. 6/28/12), 102 So.3d 801, 804, n.1, writ denied , 12-1694 (La. 2/22/13), 108 So.3d 763.

The Hicks brothers and Tommie Molette were tried together. Anderson, who was not charged with second degree murder, was tried separately from the other three co-defendants.

In 2010, A.P. and Richshawn Williams, an associate of the Hicks brothers, were charged with multiple counts of armed robbery. In 2011, A.P. pled guilty to one count of the lesser charge of accessory after the fact to armed robbery in exchange for a reduced sentence of three years; Williams pled guilty to one count of armed robbery in exchange for a sentence of twenty years. The disparity in their sentences created tension between A.P. and Williams.

Originally, J.A. positively identified Kevin, Kevias, and Anderson from photographic lineups as the shooters. However, at trial, she testified that she did not recall seeing Kevin's face.

A full discussion of ballistics evidence presented at trial is presented infra .

Dr. Garcia testified that Deshon Evans received six gunshot wounds : a projectile entered the upper left chest near the arm pit and exited through his arm; a projectile entered the left forearm and exited through his back; another projectile entered the forearm and exited above the wrist; a projectile entered the back side of the right thigh going through the muscle and exiting the thigh; a fifth projectile entered decedent's cheek going from right to left but did not exit; and the sixth projectile was the lethal wound to the right side of the head that penetrated his brain. Dr. Garcia recovered intact projectiles from the decedent's brain.

Trial testimony revealed that an unrelated defendant pled guilty to the December homicide on Clearview Parkway at I-10.

In this opinion, we will address the first two assignments together as they are related.

See the discussion below regarding the Motion to Sever Defendants.

See State v. Schneider , 542 So.2d 620 (La. App. 5th Cir. 1989), writ denied , 548 So.2d 1245 (La. 1989), "in many cases the trial court can mitigate any prejudice from joinder of offenses by providing clear instructions to the jury."

See State v. Davis , 12-512 (La. App. 5 Cir. 4/24/13), 115 So.3d 68, 84-85, writ denied , 13-1205 (La. 11/22/13), 126 So.3d 479, where this Court found that any possibility of prejudice in the joinder of offenses was mitigated by the jury instructions and the State's orderly presentation of the evidence, noting that the jury instructions listed the eight crimes with which the defendant was charged along with the responsive verdicts for each offense, that for the charges of second degree murder and attempted second degree murder the instructions specified the victim of each offense, that the instructions also provided the elements for each charged offense as well as the elements for each responsive verdict, and that the jury received eight separate verdict sheets each indicating the charged offense and the responsive verdicts. This Court found that based on the foregoing, any possible juror confusion was minimized.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).